UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

ARTHUR HAYES,
BEN DELO, and
SAMUEL REED

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20 Cr. 500 (JGK)

**GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR A BILL OF PARTICULARS**

AUDREY STRAUSS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Samuel Raymond
Jessica Greenwood
Thane Rehn
Assistant United States Attorneys

- Of Counsel -

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 2
FACTUAL & PROCEDURAL BACKGROUND ..... 2
A. Overview of the Charges ..... 2
B. Discovery ..... 4
DISCUSSION ..... 5
I. THE DEFENDANTS ARE NOT ENTITLED TO A BILL OF PARTICULARS ..... 5
A. Applicable Law ..... 5
B. Argument ..... 10
1. There is no Basis for a Bill of Particulars ..... 10
2. The Defendants' Specific Requests are Meritless ..... 12
a. U.S. Customers ..... 12
b. Marketing Activities Directed at U.S. Customers ..... 14
c. Defendants' Violations of the BSA ..... 14
d. Defendants' Knowledge that BitMEX Was an FCM ..... 16
e. Defendants' Failures to Deactivate U.S. Accounts and Falsification of Records ..... 18
f. Identity of Co-Conspirators ..... 19
CONCLUSION ..... 20

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the pretrial motion filed by Arthur Hayes, Ben Delo, and Samuel Reed (the "defendants"). The defendants ask this Court to compel the Government to file a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, or in the alternative for the Government to be required to produce an exhibit list and copies of its exhibits thirty days before trial. The request for a bill of particulars is meritless and should be denied.[1] The Government agrees to further assist the defendants in their preparation for trial by producing an exhibit list and copies of its exhibits 30 days before commencement of trial, so defendants' alternative relief should be denied as moot.

## FACTUAL & PROCEDURAL BACKGROUND

### A. Overview of the Charges

On October 1, 2020, the United States Attorney's Office for the Southern District of New York (the "USAO" or the "Government") unsealed a two-count indictment (the "Indictment") charging the defendants, and co-defendant Gregory Dwyer, for their roles in causing and conspiring to cause violations of the Bank Secrecy Act (the "BSA") from in or about September 2015 through in or about September 2020. Specifically, the defendants willfully caused and conspired to cause the Bitcoin Mercantile Exchange ("BitMEX")—an online cryptocurrency

[1] The Court should also deny defendant Reed's motion for a bill of particulars for an additional reason: he did not confer in good faith with the Government on this request for a bill of particulars. While their declaration states that "defense counsel" has conferred with Government counsel requesting a bill of particulars as required by Local Rule 16.1, Decl. ¶ 3, that is only true as to defendants Hayes and Delo. *See* Exs. A, B. Counsel for defendant Reed did not make such a request. *See, e.g.*, *United States v. Goode*, No. 16 CR. 529 (NSR), 2018 WL 919928, at *15 (S.D.N.Y. Feb. 15, 2018) (denying motion for bill of particulars for failure to provide affidavit consistent with Local Rule 16.1 even though co-defendant had provided such an affidavit).

Additionally, in their conferrals with Government counsel, defense counsel did not request that the Government produce an exhibit list before trial; the Government does so here simply to further assist the defendants' preparation.

derivatives exchange that offered and solicited its services to thousands of U.S. customers—to violate U.S. law by willfully failing to establish, implement, and maintain a BSA-mandated anti-money laundering ("AML") program. Count One charges the defendants and Dwyer with aiding and abetting BitMEX's BSA violations, in violation of Title 31, United States Code, Sections 5318(h) and (l), 5322(a) and (c), Title 31, Code of Federal Regulations, Sections 1026.210 and 1026.220, and Title 18, United States Code, Section 2; Count Two charges them with conspiring to cause BitMEX to violate the BSA, in violation of Title 18, United States Code, Section 371.

As set forth in the Indictment, the defendants are the co-founders and majority owners of BitMEX. (Indictment ¶¶ 1, 9.) As alleged in the Indictment, and at all relevant times, BitMEX was a trading platform that offered financial derivatives tied to the value of cryptocurrencies. (Indictment ¶ 1.) Among other products, BitMEX allowed its customers to buy and sell futures contracts and swaps tied to the price of Bitcoin and other cryptocurrencies and accepted Bitcoin both to margin and to guarantee actual and potential trades. (Indictment ¶¶ 1, 13, 17, 18.) BitMEX, at all relevant times, offered and sold these commodity derivatives to U.S. customers, including individual retail customers. (Indictment ¶ 17.) Accordingly, BitMEX was at all relevant times a futures commission merchant ("FCM") required under the Commodity Exchange Act ("CEA") to register as such with the U.S. Commodity Futures Trading Commission (the "CFTC"). (Indictment ¶ 18.) As an FCM, BitMEX was required to implement AML and know-your-customer ("KYC") controls under CFTC rules and the BSA, which apply to registered and unregistered FCMs. (Indictment ¶¶ 20–23.) Despite each defendant knowing, from at least in or about September 2015, that BitMEX could not serve U.S. customers without complying with U.S. AML and KYC requirements, each defendant caused, and conspired to cause, BitMEX to continue operate without such programs while continuing to serve U.S. customers. (Indictment ¶ 25.) Each

defendant had specific knowledge that BitMEX was serving U.S. customers after September 2015, including through their access to internal BitMEX reports which tracked and reported trading revenue by country monthly (the "country revenue reports"), among other information. These reports indicated that U.S. customers were trading on BitMEX's platform from at least in or about November 2017 through at least in or about July 2018. (Indictment ¶ 27.)

**B. Discovery**

As of this filing, the USAO has produced hundreds of thousands of documents as Rule 16 material. Those document productions include, *inter alia*, documents the USAO received from the CFTC, as described in prior briefing; returns from dozens of grand jury subpoenas; public records including from BitMEX's website; responsive returns from search warrants executed on email and other electronic accounts, physical devices, and forensic images; and internal FBI reports. The USAO has also produced or will soon produce statements for potential witnesses within its possession, including for individuals the USAO does not actually intend to call at the trial scheduled in this matter for March 2022 (which the USAO is under no legal obligation to produce and, even for anticipated witnesses, is producing months in advance of any pretrial disclosure deadline). The USAO is continuing to produce documents and witness statements in its possession as it obtains them.

The Government has also responded by telephone, email, and letter to requests for information to assist the defendants in reviewing discovery. Most pertinently, on May 7, 2021, the Government provided specific, albeit non-comprehensive, answers to almost every question the defendants asked about the Government's document discovery productions. Rodgers Decl. Exs. C, D.

## DISCUSSION

## I. THE DEFENDANTS ARE NOT ENTITLED TO A BILL OF PARTICULARS

The defendants move for a bill of particulars identifying: (1) U.S. customers that defendants allowed to access BitMEX's platform (Br. at 8-11); (2) marketing activities directed to U.S. customers (Br. at 12–13); (3) steps BitMEX needed to take to be exempted from U.S. laws (Br. at 13–16); (4) information that BitMEX was an FCM and that the defendants knew that (Br. at 16–18); (5) information about falsification of BitMEX records and failures to deactivative known U.S. customers (Br. at 18–19); (6) alleged co-conspirators (Br. at 19–21). A bill of particulars regarding these matters is unwarranted. The Government has gone to extensive lengths in order to provide the defendants with a host of evidentiary detail, specifically by charging them in a detailed Indictment, providing comprehensive, organized, electronically-searchable discovery, and continuing to engage in ongoing discussions with defense counsel. The defendants are not entitled to additional particularity and their motion should be denied.

Additionally, as requested by defendants in the alternative, the Government agrees to produce a list of exhibits and copies of the exhibits, from those documents in the Government's possession at that time, no later than 30 days before trial. (Br. at 11).

### A. Applicable Law

The proper purpose of a bill of particulars under Federal Rule of Criminal Procedure 7(f) is "to provide a defendant with information about the details of the charge against him if this is *necessary* to the preparation of his defense, and to avoid prejudicial surprise at trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (quotation marks and citation omitted; emphasis added), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010). Accordingly, "[a] bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United*

*States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quotations marks and citation omitted); *see United States v. Mahabub*, 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014); *United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977) ("The purpose of a bill of particulars is to apprise defendant of the essential facts of a crime.").

In exercising its broad discretion to determine whether the charges are "so general" that they require supplementing, the Court should consider not just the text of the Indictment, but also discovery and other information supplied to the defendant to date. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *see also, e.g.*, *United States v. King*, No. 10 CR. 122 JGK, 2011 WL 1630676, at *6 (S.D.N.Y. Apr. 27, 2011) (denying motion for bill of particulars, in part, because "not only has there been extensive discovery produced by the government, but the Government has worked with the defense to produce discovery in a form that is usable by the defense"); *United States v. Block*, 2017 WL 1608905, at *6-7 (S.D.N.Y. Apr. 28, 2017) (denying request for bill of particulars as to alleged fraud and unindicted co-conspirators where indictment sufficiently advised defendant of nature of charges against him and described with specificity acts he allegedly committed, nature of conspiracy, and explained in language closely tracking statute crimes alleged); *United States v. Torres*, 901 F.2d at 234 (affirming denial of a bill of particulars where defendants had "been provided with a wealth of evidentiary detail from the discovery to date, including electronic intercepts, search evidence and exhaustive supporting affidavits") (internal quotation marks omitted); *United States v. Monserrate*, 2011 WL 3480957, at *4 (S.D.N.Y. Aug. 4, 2011) (denying request for bill of particulars where discovery and indictment was "sufficient to apprise the defendant of the charge" and to allow him to prepare for trial); *United States v. D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) (denying bill of particulars request where supplementary facts supplied to defense by way of letter); *United States v. Cuti*, 2009 WL

3154310, at *3-4 (S.D.N.Y. Sept. 24, 2009) (in accounting fraud case, denying request for particulars identifying all fraudulent transactions, payments, and statements made in furtherance of charged scheme where Government had furnished more than a million pages of discovery and, by letter, identified a series of fraudulent transactions and payments); *United States v. Samsonov*, 2009 WL 176721, at *4 (S.D.N.Y. Jan. 23, 2009) (denying bill of particulars request where indictment and discovery materials gave defendant adequate information to prepare for trial); *United States v. Earls*, 2004 WL 350725, at *4-5 (S.D.N.Y. Feb. 25, 2004) (denying motion for bill of particulars in fraud case where, among other things, Government had "furnished the defendant with voluminous discovery"); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (denying bill of particulars request in stock fraud case where indictment was 15 pages long and substantial discovery had been provided); *United States v. Henry*, 861 F. Supp. 1190, 1198 (S.D.N.Y. 1994) ("In determining whether to grant a motion requesting a bill of particulars, the Court must ascertain whether the information sought has been provided elsewhere, such as through pre-trial discovery, voluntary disclosure by the government, or the indictment itself.").

Although the Government cannot provide "mountains of documents to defense counsel" as a substitute for a bill of particulars where one would otherwise be required, *see Bortnovsky*, 820 F.2d at 575; *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000), the provision of voluminous discovery in combination with some guidance about what is most relevant can vitiate a need for further particulars, *see, e.g.*, *United States v. Kazarian*, 2012 WL 1810214, at *25 (S.D.N.Y. May 18, 2012); *United States v. Mandell*, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010) (denying request for particularization of alleged misrepresentations where the indictment was 34 pages long and Government had provided voluminous, organized discovery). In no event should

volume of discovery alone warrant a bill of particulars; "[w]hile [a] [c]ourt may sympathize with counsel's task of reviewing a large quantity of materials that continue to be produced," that concern is addressed by granting the defense sufficient time in which to conduct the review in advance of trial. *See United States v. Levy*, 2013 WL 664712, at *13 (S.D.N.Y. Feb. 25, 2013); *see also King*, 2011 WL 1630676, at *6 (voluminous discovery "is not a concern that a bill of particulars is designed to address").

Bills of particulars would undoubtedly be helpful to the defense in any case. But "the law does not impose upon the Government an obligation to preview its case or expose its legal theories," *Leonelli*, 428 F. Supp. at 882, and therefore "[t]he ultimate test must be whether the information sought is *necessary*, not whether it is helpful." *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (emphasis added); *Mahabub*, 2014 WL 4243657, at *2 ("The purpose of a bill of particulars is to ensure that a defendant has the information necessary to prepare a defense, not to turn over all information that would aid the defendant."); *United States v. Rittweger*, 259 F. Supp. 2d 275, 292-93 (S.D.N.Y. 2003) (denying bill of particulars request as "an impermissible attempt to compel the Government to provide the evidentiary details of its case") (citation and quotation marks omitted).

A bill of particulars should not be misused to compel the Government to disclose "the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Sattar*, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004), *aff'd sub nom. United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009). Applying these principles, courts in this district routinely deny motions for bills of particulars that are, at bottom, demands for additional details of the manner in which the offense was committed or how the Government intends to prove its case at

trial. *See, e.g.*, *United States v. Akhavan*, No. S3 20-CR-188(JSR), 2020 WL 2555333, at *2 (S.D.N.Y. May 20, 2020) (rejecting "requests [that] are simply an attempt to pin the Government to particular evidentiary details."); *United States v. Carroll*, No. 19 CR 545 (CM), 2020 WL 1862446, at *25 (S.D.N.Y. Apr. 14, 2020); *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *3 (S.D.N.Y. Aug. 17, 2018); *see also Mitlof*, 165 F. Supp. 2d at 569 (bill of particulars not proper to force the Government to provide "the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories."); *see also Torres*, 901 F.2d at 234 ("'Acquisition of evidentiary detail is not the function of the bill of particulars.'") (quoting *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir. 1968)). The "'wheres, whens and with whoms'" are "beyond the scope of a bill of particulars." *Mitlof*, 165 F. Supp. 2d at 569 (citing *Torres*, 901 F.2d at 233-34); *see also, e.g.*, *D'Amico*, 734 F. Supp. 2d at 335 ("'A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial.'") (quoting *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001)); *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory."); *Henry*, 861 F. Supp. at 1197 ("This instrument should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense.").

There are good reasons why bills of particulars are warranted only where the allegations in the indictment, as supplemented by discovery and elsewise, are so general as to render it

impossible to prepare a defense. Because "a bill of particulars confines the Government's proof to particulars furnished," it can "restrict unduly the Government's ability to present its case." *Henry*, 861 F. Supp. at 1197; *see also Mitlof*, 2014 WL 4243657, at *2 (recognizing that "care must be taken" because "[t]he government's presentation of evidence at trial is limited to the particulars contained in the bill"); *Samsonov*, 2009 WL 176721, at *3 ("The vehicle of a bill of particulars serves to inform a defendant of the nature of the charge, when he is otherwise insufficiently informed, and must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches."). Moreover, the Government's provision of particulars tantamount to an itemized preview of its proof creates the very real danger that a defendant will "tailor [his] testimony to explain away the Government's case." *Henry*, 861 F. Supp. at 1197. These concerns animate the rule that "if the defendant has been given adequate notice of the charges against [him] and can prepare fully for trial with reasonably diligent efforts, the Government cannot be required to disclose additional details about its case." *Id.*

**B. Argument**

**1. There is no Basis for a Bill of Particulars**

There is no basis for a bill of particulars in this case. The charges against the defendants are clear from the face of the Indictment. During the relevant period charged in the Indictment, the defendants caused BitMEX, the company they controlled (Indictment ¶ 12), which offered and sold commodity derivatives to U.S. customers on margin (Indictment ¶¶ 1, 13, 17, 18), to continue to serve U.S. customers without a BSA-compliant AML program and KYC controls. (Indictment ¶¶ 20–23, 25.)

The Indictment itself, which contains approximately 29 paragraphs of detailed speaking allegations and outlines the factual basis underlying the charged conspiracy and substantive

offense, provides a sufficient basis to deny the defendants' motion in its entirety. *See, e.g.*, *United States v. Bonventre*, 646 F. App'x 73, 79 (2d Cir. 2016) ("[E]videntiary detail is not the function of the bill of particulars. . . . . Particulars are necessary only where indictment charges are so general that they do not advise the defendant of the specific acts of which he is accused.") (internal quotation marks omitted); *Ferrarini*, 9 F. Supp. 2d at 299 (denying bill of particulars where "indictment alone . . . discloses sufficient information to inform the defendants adequately of the charges against them").

The Government's substantial, discovery productions, including provisions of the statements of more than 20 potential witnesses far in advance of any disclosure deadline under *Giglio* or the Jencks Act, further militates against the defendant's motion. *King*, 2011 WL 1630676, at *6. And the Government's further provision of information to defense counsel in response to specific questions about the very topics they now move for particulars on, Exs. C and D, is yet another reason to deny their motion. *E.g. Kazarian*, 2012 WL 1810214, at *25.

Finally, and as requested by the defendants in the alternative, Br. at 11, the Government agrees to provide an exhibit list and copies of its exhibits 30 days before commencement of trial, an agreement which provides another reason to deny their motion.[2] *King*, 2011 WL 1630676, at *6 (denying motion for bill of particulars, in part, because the "Government has also agreed to provide a copy of the exhibits it intends to introduce at trial from" certain computers at a set date before trial).

[2] The Government respectfully requests that it be allowed to supplement this exhibit list as needed after that date.

**2. The Defendants' Specific Requests are Meritless**

The Court should deny the defendants' motions for the reasons previously provided. But each of the six supposed topics for which they seek particulars is similarly unavailing. The defendants state that they need particulars regarding: 1) U.S. customers that defendants allowed to access BitMEX's platform; 2) BitMEX marketing activities directed to U.S. customers; 3) steps BitMEX needed to take to be exempted from U.S. law; 4) BitMEX's status as an FCM and defendant's knowledge of that status; 5) falsification of BitMEX records and failure to take steps to deactivate U.S. accounts; and 6) their alleged co-conspirators. Through the Indictment and its May 7 Letter, the Government has provided more than sufficient information on each topic.

**a. U.S. Customers**

The Indictment itself provides detailed information about the defendants' actions allowing BitMEX to service U.S. customers, including "which U.S. customers supplied the purported jurisdictional basis for the government to bring the BSA-related charges in the Indictment." (Br. at 8–11). *See* Indictment ¶¶ 17 (during the relevant time period, "BitMEX has solicited and accepted offers on its cryptocurrency futures and swaps from customers located in the United States, including individual retail customers. As of in or about September 2018, for example, internal BitMEX records reflected thousands of BitMEX accounts with United States location information that were enabled for trading."), 26 (defendants "knew that specific customers, residing in the United States, continued to access BitMEX's platform into in or about 2018," because, *inter alia*, "Delo and Dwyer knowingly allowed one of these customers to access BitMEX using a non-U.S. passport which did not belong to this customer"; "Delo also allowed another customer to continue to access a BitMEX trading account despite this customer being 'US based'" because of his importance in the cryptocurrency markets; and "Reed allowed a friend of his who he knew resided in the United States to continue to access BitMEX's platform" through at least

October 2018), 27 (defendants had access to internal BitMEX reports which showed, from in or about November 2017 through July 2018 that U.S. customers were trading on BitMEX's platform, and Reed specifically received a report showing trading revenue attributable to U.S. customers in December 2018 which he falsely denied knowing about the following month), 28 (the defendants "well knew" and "intended" that the checks put in place to identify and block U.S. customers were limited and could be easily evaded, particularly for U.S. customers), 29 (BitMEX "engaged in marketing activities with the effect and intent of attracting U.S. customers.").

The Government went even further in its supplemental May 7 Letter, which provides additional details. That letter also identified specific documents produced in discovery that directly answer the specific questions the defendants raise, Br. at 8–9, *see* Ex. C at 2 and Ex. D at 3, including internal BitMEX documents that defendants were aware of during the relevant time period that list BitMEX users who were using the trading platform from within the United States, documents that identify and provide details about the three U.S.-based customers described in the Indictment who the defendants knowingly allowed on the platform, and documents that detail defendants' knowledge that customers were using virtual private networks to evade BitMEX's supposed controls. Br. at 9–10; *see* Ex. C at 3, Ex. D at 3 (citing US_00173875 - US_00173878) (a specific internal communication, which defendants Hayes, Delo, and Dwyer all reviewed and discussed, in which a BitMEX employee stated that one of the three U.S.-based customers was "openly tell[ing] Americans on twitter and his website to use a [virtual private network] to sign up for BitMEX,"); *see also* Indictment ¶ 28 (defendants "caused BitMEX to take no steps to restrict access of BitMEX via" virtual private network). These disclosures are more than sufficient to provide defendants with adequate information to prepare for trial, and the request for a bill of particulars is merely an improper attempt to restrict the scope of the Government's proof at trial.

**b. Marketing Activities Directed at U.S. Customers**

The Indictment also describes BitMEX's marketing activities directed to U.S. customers, including identifying a specific media event in Manhattan in May 2018 aimed at U.S. customers, and a number of television appearance made by Hayes in which he promoted BitMEX. Indictment ¶ 29. Defendants admit that the Indictment and the Government's May 7 Letter describe "[c]onferences, meetings, and television appearances", but assert that such activities "can occur" "without constituting marketing activities directed at U.S. customers." Br. at 12. That argument is a factual one about whether the identified acts constitute marketing to U.S. customers, not an argument that supports the defendant's request for further disclosures. But in any event, the Government's discovery, particularly its productions of early material for potential witnesses, is replete with descriptions about how the defendants knew and designed these efforts to convince U.S. customers to evade BitMEX's almost meaningless controls and access the platform nonetheless. *See, e.g.*, 3516-32.001–32.002 [redacted]

**c. Defendants' Violations of the BSA**

The defendants next assert, somewhat bafflingly, that the Government must particularize the steps which defendants could have taken to "exempt BitMEX from the application of U.S. law." Br. 13–16. First, the suggestion that the Government has an obligation to advise criminal defendants on how they could have complied with the law is frivolous, and defendants cite no authority to support it. The Indictment charges the defendants with willfully failing to implement an anti-money laundering program consistent with the Bank Secrecy Act based on their actual actions, and fully informs the defendants of the basis for those charges. The Government's view

of hypothetical alternative actions that the defendants might have taken, but did not, are not relevant to the offense charged.

The Indictment lays out the Government's theory of the case in detail. The defendants violated the BSA by "purportedly" withdrawing from the U.S. market publicly in or about September 2015, Indictment ¶ 2, but behind the scenes, the defendants: allowed specific known U.S. customers to access their platform because, for example, they were "famous in Bitcoin," or were personal friends, Indictment ¶ 26; knew that BitMEX reports showed that thousands of additional U.S. customers were continuing to trade on the platform, Indictment ¶ 27; set up wholly deficient controls that they knew would be and were easily evaded by U.S. customers, Indictment ¶ 28; and actively marketed BitMEX to U.S. customers. Indictment ¶ 29. In summary, the Indictment alleges that the defendants knew that BitMEX was accepting U.S. customers, which required the Company to comply with the Bank Secrecy Act, but then willfully caused the Company to fail to implement an anti-money laundering program as required by the BSA. Indictment ¶¶ 22–25.[3]

The defendants cite *United States v. Murgio*, 209 F. Supp. 3d 698, 705, 720 (S.D.N.Y. 2016), in which the court ordered the Government to identify the regulations the defendant in that case had violated. But here, the Indictment already identifies the relevant statutes and regulations the defendants violated. Because cryptocurrencies are commodities for purposes of the Commodity Exchange Act, *see In re Coinflip, Inc.*, CFTC No. 15-29, 2015 WL 5535736, at *2 (Sept. 17, 2015) (consent order) *and In re TeraExchange LLC*, CFTC No. 15-33, 2015 WL 5658082, at *3 n.3 (Sept. 24, 2015) (consent order), BitMEX, which solicited or accepted offers

[3] There is nothing "circular" about this theory. Br. at 16. The defendants were not blind to the presence of U.S. customers on BitMEX: they knew about such users, encouraged them, and changed BitMEX's internal controls to ensure some would not be removed.

for cryptocurrency futures contracts, swaps, and retail commodity transactions, and accepted money and property to margin, guarantee, and secure those trades and contracts, was an FCM. Indictment ¶¶ 3, 13, 14, 15, 16, 17, 18; *see also* 7 U.S.C. §§ 1a(28) (definition of futures commissions merchant), 6d(a) (CFTC registration requirements for FCM). Under the BSA, FCMs are required to implement an anti-money laundering program consistent with the Bank Secrecy Act, and file suspicious activity reports, as explained in detail in the Indictment. Indictment ¶¶ 5–8, 30 (citing 31 U.S.C. §§ 5318 and 5322, the BSA and BSA criminal penalty provisions, and 31 C.F.R. §§ 1026.210 and 1026.220, implementing regulations for the BSA which require FCMs to implement BSA-compliant AML and KYC policies), 32 (same). During the period charged in the Indictment, the defendants caused BitMEX, and conspired together to cause BitMEX, to never implement a BSA-compliant anti-money laundering program or file suspicious activity reports. Indictment ¶¶ 12, 20, 21, 22, 23, 24, 25. The clear description of the relevant laws in the Indictment specifies "which [] regulations [defendants] may have violated," *Murgio*, 209 F. Supp. 3d at 720, and certainly gives the defendants and their highly qualified counsel "adequate notice of the charges" so that they "can prepare fully for trial with reasonably diligent efforts." *Henry*, 861 F. Supp. at 1197.

**d. Defendants' Knowledge that BitMEX Was an FCM**

Similarly, the Indictment and extensive discovery provide a clear basis for defendants to understand how BitMEX was an FCM, and that each defendant knew that as such the Company was required to implement a BSA-compliant anti-money laundering program. Br. at 16–18. The Indictment alleges, and the Government's productions demonstrate, that the defendants were closely following regulatory developments regarding cryptocurrency. Indictment ¶ 25. As charged in the Indictment, when the "CFTC issued public enforcement orders clarifying that cryptocurrencies are commodities for purposes of the CEA," the defendants realized that

BitMEX's business model would subject them to BSA obligations if they served U.S. customers, because BitMEX was soliciting and accepting offers for commodity futures contracts, swaps, and retail commodity transactions, and accepted money and property to margin, guarantee, and secure those trades and contracts. Indictment ¶ 25. Once again, the Indictment clearly alleges the defendants' knowledge, and the defendants' motion is an improper effort to limit the Government's proof at trial.

Although the allegations in the Indictment are sufficient to provide notice to the defendants, the Government's May 7 Letter additionally cites to various document productions showing that each defendant knew that BitMEX was an FCM. For example, in the May 7 Letter the Government cited to Bates ranges: US_00016242-US_00016386; US_00016387-US_00016421; US_00016422-US_00016446. Ex. C at 6, Ex. D at 6. Those are the responses which the BitMEX company and these defendants (not Dwyer) submitted to the CFTC during the CFTC's investigation. In those letters, the defendants stated that they had contemporaneously reviewed and relied upon guidance issued by the CFTC to a company called ICBIT, which ICBIT then released to the public in March 2016. US_00016401-US_00016402; US_00016264-US_00016265. This correspondence, which Mr. Hayes contemporaneously reviewed and discussed with Mr. Delo, states among other things that the CFTC had determined that ICBIT had been acting as an unregistered FCM, by offering "futures contracts to U.S. customers." US_00189549; *see also* Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Compel, Dkt. No. 112, at 20 (referencing the ICBIT correspondence as "publicly known in 2016 and understood as a statement by the CFTC of measures that would be suitable to allow a global cryptocurrency platform to operate its business outside the U.S. and not fall within a CFTC registration category."). The Indictment, along with the May 7 Letter, therefore

directly answers any questions about the defendants' knowledge that BitMEX was an FCM, given its continued and ongoing solicitation of U.S. customers.

**e. Defendants' Failures to Deactivate U.S. Accounts and Falsification of Records**

There is no basis to require the Government to provide information regarding the defendants' failures to take steps to deactivate U.S. customer accounts and falsified BitMEX records. Br. at 18–19. First, the Indictment asserts that these failures were one way in which the defendants violated the BSA, and the defendants' motion simply seeks further "evidentiary detail," which "is not the function of the bill of particulars." *Bonventre*, 646 F. App'x at 79. Second, as described above and in the Indictment, the Government's theory is not merely that the defendants refused in specific cases to deactivate U.S. customer accounts. Rather, that was merely *one* of the ways defendants knew that they were allowing U.S. customers to access BitMEX. The defendants knew BitMEX reports showed that U.S. customers were trading on the platform, Indictment ¶ 27; set up wholly deficient controls that they knew would be and were easily evaded by U.S. customers, Indictment ¶ 28; and marketed to U.S. customers. Indictment ¶ 29. They did so without consistently removing such customers when identified; and failing to take additional, known, steps to restrict U.S. customers. Finally, the Government's provision of potential witness statements months in advance of trial has provided the defendants with even more of an opportunity to learn of the bases of the Government's charge against them with respect to these allegations. *E.g.* 3516-12.014 [redacted] Exs. C and D at 4 (citing US_00296092, in which Delo described knowingly changing internal BitMEX data to falsify records about the country of residence for the customer who was "famous in Bitcoin").

**f. Identity of Co-Conspirators**

Finally, there is no basis for the Court to order identification of uncharged co-conspirators. Br. at 19–21. Requests that the Government identify all co-conspirators are routinely denied. *See, e.g.*, *Murgio*, 209 F. Supp. 3d at 721 ("As this Court noted in a recent Memorandum and Order, courts in this circuit frequently exercise their discretion to deny requests to identify co-conspirators through a bill of particulars."); *United States v. Calvente*, 2013 WL 4038952, at *1-2 (S.D.N.Y. July 26, 2013) (collecting cases). Here, the Indictment alleges that "others known and unknown" acted alongside the four named defendants. In light of the evidentiary detail set forth in the Indictment and the nature of this case, where the defendants owned and operated BitMEX through which they committed the charged offense, the Government need not delineate which other employees of BitMEX and other personnel may have been sufficiently culpable and possessed the requisite intent to be deemed a co-conspirator in order to enable the defendants to adequately prepare their defense. *See, e.g. United States v. Ray*, No. 20-CR-110 (LJL), 2021 WL 3168250, at *5 (S.D.N.Y. July 27, 2021) ("The nature of the conspiracy is also such that the co-conspirators would have been drawn from a limited group of people and [defendants] would be expected to know the identities of the persons whom . . . would be considered to be co-conspirators."); *see also United States v. Rodriguez*, 1999 WL 820558, *1-2 (S.D.N.Y. Oct. 13, 1999) (denying request for identification of co-conspirators where none were alleged to have committed any overt acts and identity of the conspiracy as a whole was clear; "[c]ourts have been highly reluctant to require a bill of particulars when defendants have asked for specific identities of co-conspirators or others allegedly involved"); *see also United States v. Tucker*, 19 Cr. 91 (PKC), June 3, 2016 Conf. Tr., at 9-10 (denying request for co-conspirator identities, reasoning that that bill of particulars "[i]s not an investigative tool. It's not a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial.").

**CONCLUSION**

For the reasons set forth above, the Court should deny the defendants' motion for a bill of particulars.

Dated: New York, New York
October 8, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: /s/
Samuel Raymond
Jessica Greenwood
Thane Rehn
Assistant United States Attorneys
(212) 637-6519/1090/2354