M1KAAHAYC                         Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              20 CR 500 (JGK)

5    ARTHUR HAYES, BENJAMIN DELO
     SAMUEL REED and GREGORY DWYER,
6
               Defendants.
7
     ------------------------------x
8
                                              New York, N.Y.
9                                             January 20, 2022
                                              3:40 p.m.
10

11   Before:

12                    HON. JOHN G. KOELTL,

13                                            District Judge

14
                         APPEARANCES
15
     DAMIEN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   SAMUEL RAYMOND
          Assistant United States Attorney
18
     JAMES J. BENJAMIN, JR.
19        Attorney for Defendant Hayes

20   PATRICK J. SMITH
     ANDREW J. ROGERS
21        Attorneys for Defendant Delo

22   DOUGLAS YATTER
          Attorney for Defendant Reed
23
     JENNA DABBS
24        Attorney for Defendant Dwyer

25

M1KAAHAYC                    Conference

```
 1            (Case called)
 2            MR. RAYMOND:  Good afternoon, your Honor.
 3            This is Sam Raymond, joined by college Thane Rehn, for
 4    the government.
 5            MR. BENJAMIN:  Good afternoon, your Honor.
 6            Jim Benjamin and Katey Goldstein, from Aken Gump,
 7    appearing on behalf of Authur Hayes.  We are joined by our
 8    colleague, Kate Shapiro.  And Mr. Hayes is on the line, as
 9    well.
10            MR. SMITH:  Good afternoon, your Honor.
11            Patrick Smith, with my colleague, Andrew Rogers, for
12    the defendant Ben Delo, who is present with me and on the line.
13            Good afternoon.
14            THE COURT:  Good afternoon.
15            MR. YATTER:  Good afternoon, your Honor.
16            Douglas Yatter, from Latham & Watkins, together with
17    my partner, Ben Naftalis, for Sam Reed, who is also on the
18    line.
19            MS. DABBS:  Good afternoon, your Honor.
20            Jenna Dabbs, from Kaplan Hecker & Fink, for Mr. Dwyer.
21    I am joined on the line by my colleagues, Sean Heckle and Mike
22    Ferrara.  Mr. Dwyer is on the line, as well.
23            THE COURT:  All right.  Good afternoon, everyone.
24            I am sorry for the delay.  I was on another criminal
25    case which ran longer than originally expected.
```

M1KAAHAYC                    Conference

 1              Today I have correspondence from the parties, from the

 2     defendants dated January 18, and the government's response

 3     today, January 20.  I also have the motions in limine which

 4     have been briefed so far.

 5              If there are any other issues that the parties have,

 6     I'm perfectly prepared to consider them but let me deal first

 7     with those issues.

 8              So, the dueling correspondence from January 18 and

 9     January 20, there are two issues.  The first is, the tank team

10     has reviewed some documents.  The only privilege that's

11     possibly being asserted is a BitMEX privilege.  Defendants

12     objected that the government has not yet turned over the

13     materials because they say that BitMEX has agreed to waive its

14     privilege if the documents are simply produced to BitMEX.

15              The government says okay.  At this point they will

16     produce the documents to BitMEX today, January 20.  And if

17     BitMEX is not asserting the privilege, the documents will

18     remain with BitMEX.  The redacted copies have already been

19     produced.

20              The government says give BitMEX a date.  I don't know

21     why the parties can't discuss that among themselves.  There are

22     some indications in the government letter that they're not

23     (technical interruption) here any more, that when BitMEX

24     discloses the documents to the individual defendants that

25     that's not a waiver of BitMEX's privilege.  But the government

M1KAAHAYC                    Conference

1    hasn't reached that decision yet.

2            It also -- well, somewhat inconsistent with the

3    government's position about how BitMEX's statements are

4    statements of individual defendants, but no reason to reach

5    that either.  It doesn't appear that there's anything for me to

6    do on this.  The government is going to produce, the redacted

7    documents have already been produced to the defendants.  And

8    the documents are going to be produced to BitMEX today, by

9    today to see if BitMEX is intending to assert any privilege.

10   in any event, BitMEX will have the documents and BitMEX can do

11   what it will with the documents.  Again, it doesn't seem as

12   though there's anything for me to decide here.

13           The second issue is the parties have appeared to reach

14   the end of the line with respect to the documents that the

15   government has been able to get from the CFTC to produce to the

16   defendants.  I've already indicated in the past that this

17   cooperation between the government and the defendants and the

18   CFTC has resulted in a great deal of information being provided

19   by the CFTC that might not otherwise have been provided, and

20   that there's a very limited today amount of material that the

21   CFTC had not produced.  And so, the continuing negotiations

22   between the parties was very productive.

23           There was and is outstanding a request by the

24   defendants for additional, that the government produced

25   additional documents from the CFTC, that the government be

1    required to produce those documents because the CFTC was in

2    fact conducting a joint investigation with the government and

3    it's never been necessary for me to rule on whether it was a

4    joint investigation or a parallel investigation.  Although, I

5    intimated some views on that subject because the continuing

6    negotiations were very productive toward producing documents.

7    And the defendants have never asked me to rule specifically on

8    whether the investigation with the CFTC was a joint

9    investigation or simply a parallel investigation.  Although, I

10   intimated some views on that subject.  So, that issue is still

11   out there.  Whenever the defendants want me to rule on that,

12   I'm perfectly prepared to rule on that issue, today or at any

13   other time.

14          But at this point, the defendants have proposed to

15   issue a subpoena and they asked me to sign it for the CFTC.

16   So, the government objects.  Although, they say they're not

17   sure they're the right party to object, they don't know since

18   it's subpoena directed to the CFTC, whether they have standing

19   or not.  They're looking at it but they say that the subpoena

20   is plainly improper, overbroad.

21          My general view is I sign subpoenas because if a party

22   objects to the subpoena then I'll rule on the objections to the

23   subpoena and I may quash the subpoena, but at least it should

24   be subject to an adversary process.

25          Having said that, even without getting the defense

1    letter, I looked at the subpoena and I had intended to urge the

2    defendants if they were serious about the subpoena, to look

3    carefully at the Nixon case and make sure that they were

4    comfortable that the subpoena was in fact the subpoena for

5    evidence to be used at trial and not simply a discovery

6    subpoena or more akin to a request for documents in a civil

7    case, because if the subpoena was overbroad in response to an

8    objection, it would be quashed.  And so, this particular

9    subpoena has definitions which go on for pages, followed by

10   requests which include such things as all CFTC investigative

11   documents or communications relating to HDR or defendants that

12   the CFT has not produced to the department justice in

13   connection with United States against Hayes.  That, in and of

14   itself, appears to be a dragnet rather than requesting specific

15   documents where there's a good faith belief that they are

16   evidence for trial.

17          So, that was my reaction to the subpoena.  If the

18   defendants want to proceed with that subpoena, so be it.  I'll

19   look at it again.  I would probably sign it in order to give

20   the parties, whether it be the CFTC represented by their own

21   counsel or the government, if appropriate, the opportunity to

22   move to quash the subpoena.

23          But it would, I would have thought, behoove the

24   defendants to try harder because it would take time to move to

25   quash a subpoena, get a response, get a reply and the Court to

1  rule and you'll all be weeks down the road with respect that to

2  that.

3              So, those were my observations on the recent

4  correspondence, the January 18 letter from the defendants and

5  the government's response.

6              MR. NAFTALIS:  Thank you, judge.

7              What we would propose is, judge, let us rereview the

8  rider this evening and we'll come back to the Court with an

9  (inaudible) as written or any modification consistent with your

10  comments just now.

11             THE COURT:  Okay.

12             MR. NAFTALIS:  Is that okay?

13             THE COURT:  Yes, sure.

14             MR. NAFTALIS:  And as to the tainting question, just

15  so we're clear, assuming and BitMEX has already consented to

16  the provision of the privileged documents to the defendants, as

17  soon as they reaffirm that, is it your intention that the

18  government should produce that to us?

19             THE COURT:  I don't see the correspondence as any

20  objection to that.

21             MR. RAYMOND:  Your Honor, I think just the issue that

22  sort of spoke in the wheel, we would want to convey to BitMEX

23  counsel before we actually are -- by "we" I mean the tank team,

24  were to produce that that we would want first, that we would

25  want to look at the materials and actually assert a privilege

M1KAAHAYC                     Conference

or not, and then to discuss whether or not production to the

defendants constitutes a waiver vis-a-vis the investigative

team and vis-a-vs any other party.

        So, I think that would be the interplead that we would

want to discuss with the next corporate counsel before making

that production and get their prospective on that --

        THE COURT:  That's fine.  I want to make sure that

people go through this process with eyes open.  If there's a

dispute, you can bring it to me.  I'm not opposed to the

government discussing this with BitMEX counsel or, certainly,

BitMEX counsel looking at the specific documents and

determining whether it is asserting a privilege or not

asserting a privilege.  If it's not asserting a privilege then

the documents go to the government trial team because there's

no privilege, at least as I understand it.

        If BitMEX says, yes, we are asserting the privilege,

it doesn't go to the government.  But then it's up to BitMEX if

it chooses to give those documents to the individual

defendants.  And the government is now raising a caution that

BitMEX may in fact be waiving its privilege by giving them to

the individual defendants but that's up to BitMEX.

        MR. RAYMOND:  Your Honor, the company has already

written to the government on November 19 saying They have no

objection to producing anything to us.  So, I would hope that

this is not something that requires another comeback to the

1   Court given that it's been two months since we have been

2   waiting for this.

3          THE COURT:  I hope so too.  But I don't see an issue

4   with assuring that BitMEX is doing this with eyes open with

5   respect to the specific documents at issue.

6          And second, we are about two months away from trial

7   and there is no provision that I'm aware of on these documents

8   that would have required that they be produced, required under

9   the rules that they be produced before now.  So, they're still

10  being produced two months before trial.

11         There's been more early production in this case than

12  usual which is good.  I encourage it.  Helps to prepare for

13  trial, helps to narrow the issues but making sure that BitMEX

14  has eyes open.  It's certainly a good thing, isn't it?

15         Okay.  Any other thoughts on these two issues?  No.

16  Okay.  Which leads then to the defendants' motions in limine.

17         I have gone over the motions and I am prepared to

18  rule.  If the parties want to indicate anything else after I've

19  ruled or explain to me why I should be ruling differently, I'm

20  perfectly prepared to listen but I don't have any questions

21  based on the papers at this point.

22         The defendants have filed six motions in limine.

23  Decisions on motions in limine are necessarily preliminary and

24  can be changed before or during trial.  That is particularly

25  true in this case where the motions have been filed

M1KAAHAYC                      Conference

considerably before trial and where some of the motions are not

directed at specific information and where the positions of the

parties may change, and where the defendants are not required

to present any evidence.  Nevertheless, the Court will deal

with the defendants' motions as currently briefed, without

prejudice to reconsideration.

        First, the Defendants move to preclude the government

from offering any statements from a purported debate between

defendant Hayes and Neil Roubini in July 2019, termed the

"Tangle in Taipei."  In response, the government narrowed its

offer to three segments.  The defendants contend that the

statements are irrelevant, and that any relevance is

substantially outweighed by the danger of unfair prejudice

under Federal Rule of Evidence 403.  The Court agrees. The

segments are excluded at this point,

        In segment 2, Hayes spoke in a plainly jocular fashion

about the small cost of bribing an official in the Seychelles

where BitMEX was incorporated. The government concedes that

this is no evidence that any bribe was paid, and invites the

Court to give a limiting instruction to that effect, but argues

that the quote is relevant to show the defendant's desire to

avoid regulation.  It is difficult to credit that argument.

The clip is plainly inflammatory because it precisely suggests

bribery in the most crass way, and the danger of unfair

prejudice is not outweighed by the relevance of showing that

1    the defendants thought that the Seychelles was a less regulated

2    jurisdiction than the United States.  It is hard to believe

3    that the prejudice from joking about bribing in the Seychelles

4    could be cured by an instruction that tells the jury, Never

5    mind, there's no evidence of bribery in the Seychelles.

6    Plainly, the relevance of the segment is substantially

7    outweighed by the danger of unfair prejudice which would not be

8    cured by a limiting instruction.

9            Segment 1 is a statement by Mr. Roubini to the effect

10   that US investors are subject to US regulation and can avoid

11   detection by using a VPN.  The statement is offered, not for

12   its truth, but for its notice to Mr. Hayes.  But the context of

13   the entire debate makes any individual statement suspect

14   because of the circus-like atmosphere.  In any event, the

15   statement has little relevance.  It came in July 2019, almost

16   four years after the beginning of the alleged conspiracy.  And

17   presumably, there will be more specific evidence as to the

18   ability of US citizens to use VPNs to avoid detection.  Indeed,

19   it's one of the items that specifically mentioned in the

20   indictment.  The relevance of this piece of the debate is

21   outweighed by the danger of unfair prejudice, particularly,

22   because it will be necessary to place any comments from the

23   debate into the context of the debate, which is loaded with

24   opprobrious comments by Roubini against Hayes.

25            Finally, segment 3 suggests that Hayes objects to the

M1KAAHAYC                    Conference

1    burden of anti-money laundering regulations.  But the relevance

2    of this comment is outweighed by the danger of unfair prejudice

3    for the reasons already explained.  The defendants assert in

4    their responses to the pending motions that there will be no

5    dispute at trial that BitMEX did not attempt to adopt

6    anti-money laundering procedures.  The relevance of this

7    comment therefore, is substantially outweighed by the danger of

8    unfair prejudice, namely, the need to place the comment in the

9    perspective of the debate which is laden with highly

10   prejudicial attacks on Hayes.

11           Second, the defendants move to preclude evidence of

12   other legal actions.  In response to this motion, the

13   government states that it will not offer evidence of other

14   private lawsuits against BitMEX.  That portion of the motion is

15   therefore moot.  Those other actions plainly should not be

16   mentioned because the government undertakes that they will not

17   be.

18           The defendants also seek to preclude -- if of course

19   the evidence at trial changes, these other lawsuits should not

20   be mentioned without bringing it to the attention of the Court

21   outside the presence of the jury.

22           The defendants also seek to preclude evidence of the

23   CFTC civil lawsuit against BitMEX and the defendants that was

24   filed on the same day as the indictment in this case and that

25   was settled by BitMEX without BitMEX's admitting or denying the

1   allegations in the complaint, and is still pending against the

2   defendants in this case.

3        The defendants also seek to preclude a lawsuit filed

4   by FinCen against BitMEX and the defendants that was also

5   resolved in the same way as the CFTC lawsuit.

6        The government says that it will not seek to offer

7   those lawsuits unless the defendants argue that the law was

8   unclear, in which case it will offer the lawsuits and the

9   settlements.  But this argument fails on several levels.  The

10  lawsuits were only brought at the same time as the indictment

11  in this case.  Therefore, the lawsuits could not have provided

12  notice to the defendants about what the law was at the time

13  that the defendants allegedly violated it.  Moreover,

14  allegations in a complaint are simply that, allegations.

15       See In re Blech Sec. Litig., No. 94-cv-7696, 2003 WL

16  1610775, at *11 (S.D.N.Y. Mar. 26, 2003).

17       The fact that the CFTC took a position in litigation,

18  or that FinCen did, without a court decision affirming that

19  interpretation was correct, does not establish the meaning of

20  the law.  Similarly, settlements without admitting or denying

21  any of the allegations do not establish the law.  Therefore, at

22  this point, the government has failed to proffer any relevance

23  to the CFTC and FinCen lawsuits or settlements.  And certainly,

24  any relevance is substantially outweighed by the danger of

25  unfair prejudice.  The lawsuits are laden with prejudicial

1    allegations that the defendants in this case have never

2    accepted, and the relevance of the lawsuits and settlements and

3    the relevance of the settlement is substantially outweighed by

4    the danger of unfair prejudice.

5        Finally, the Government refers in passing to the fact

6    that defendants may have made statements in the course of those

7    lawsuits which can be admitted as evidence of prior statements

8    of a party opponent, but the Government has not pointed

9    specifically to what those statements are and therefore, the

10    Court could not rule on their admissibility at this time.

11        Therefore, the motion to exclude the CFTC lawsuit and

12    settlement and the FinCen lawsuit and settlement and other

13    civil lawsuits against BitMEX is granted.

14        By the way, whoever is not muted should place their

15    phone on "mute".

16        The defendants move to dismiss any evidence of alleged

17    suspicious trading activity on BitMEX, and specifically, the

18    findings by FinCen about the amount of suspicious trading

19    activity on BitMEX, and the failure to file Suspicious Activity

20    Reports ("SARs").  In response, the government appears to take

21    the position that it will not seek to admit evidence of any

22    suspicious trading activity unless it was known to one of the

23    defendants.  But the papers are unclear as to what specific

24    incidents the government seeks to admit, what the specific

25    evidence is and what the alleged knowledge of one of the

1    defendants was.  The papers became even more clouded by

2    assertions that the suspicious activity may have been known to

3    one of the defendants' agents and that the government many seek

4    to admit evidence of what one of the defendants should have

5    known.  But the Court cannot decide this motion without knowing

6    the specific evidence that is at issue.  It appears plain at

7    this point that the Government does not seek to admit general

8    evidence about the extent of suspicious activity on BitMEX.

9            Therefore, the motion is denied without prejudice.

10           The defendants seek to require the government to

11   submit expert disclosure reports for witnesses that the

12   government contends are simply lay witnesses, namely, CFTC

13   witnesses, a FinCen witness, and an FBI witness.  The

14   government contends that all of these witnesses are lay

15   witnesses and that therefore, the government does not have to

16   make the detailed disclosure of an expert witness required by

17   Federal Rule of Criminal Procedure 16(a)(1)(G).  The government

18   says that each of these witnesses will simply testify as lay

19   witnesses pursuant to Federal Rule of Evidence 701 about

20   opinions rationally based on their own perceptions and "not

21   based on scientific, technical, or other specialized knowledge

22   within the scope of Rule 702."

23           Rule 702, in turn, allows a witness to testify as an

24   expert if qualified by knowledge, skill, experience, training

25   or education if "the expert's scientific, technical, or other

specialized knowledge will help the trier of fact to understand
the evidence or to determine a fact in issue."

        The government's description of this testimony is
somewhat at odds with another statement in its papers that the
CFTC witnesses will not "testify about their prior fact-based
expertise." Govt. Resp. at 12.

        In any event, it is plain that each of these witnesses
is not testifying simply to what the witnesses have perceived,
but rather to issues on which they have specialized knowledge.
The CFTC witnesses and the FinCen witness are testifying to the
regulatory background of the statute at issue in this case.
They are not testifying about facts that they perceived.  And
to allow them to testify to the regulatory framework without a
detailed expert report would invite opinions that otherwise
can, and should be challenged before trial.

        The government asserts that its witnesses will not be
usurping the role of the trial judge in instructing the jury as
to the applicable law, Govt. Resp. at 13, but that "the
witnesses are testifying only to their understanding of the law
from the course of their employment." Id.  But that is
precisely what experts are not supposed to do.  The jury is to
be instructed as to the law by the Court and not by alleged
experts from the government or the defense.  Experts can
provide expert testimony as to the regulatory framework to help
the jury understand unfamiliar terms and concepts, but its use

1    must be carefully circumscribed to assure that the expert does

2    not usurp either the role of the trial judge in instructing the

3    jury as to the applicable law or the role of the jury in

4    applying the law to the facts before it.

5         See United States v. Bilzerian, 926 F, 2d 1285, 1294

6    (2d Cir. 1991).

7         Indeed, as a general rule, an expert's testimony on

8    issues of law is inadmissible. Id. But the Court of Appeals

9    allowed testimony about regulatory background from Professor

10   Coffee in a securities case. Id.  If an expert witness cannot

11   testify about what the law is, it is not apparent why an

12   alleged lay witness should be permitted to testify about what

13   the law is under the cover of a statement that it is only the

14   witness's lay opinion about what the law is.  What the law is

15   is something for the Court to instruct the jury on and it is

16   for the parties to provide sufficient input to the Court to

17   instruct the jury on what the law is.

18        The government's effort to cloak expert testimony as

19   lay testimony is all the more reason for detailed expert

20   reports under Federal Rule of Criminal Procedure 16(a)(1)(G).

21   When those reports are prepared, specific opinions that are

22   impermissible can then be excluded prior to trial.  This

23   applies to both the defendants and the Government.

24        Similarly, it is plain that FBI Agent Berger is not

25   testifying about matters that he perceived, but rather to an

1    analysis of records that have been provided to him for purposes

2    of this litigation that he has analyzed using his considerable

3    computer science expertise.  That is expert testimony, not lay

4    testimony and he should also provide a detailed expert report

5    pursuant to Rule 16(a)(1)(G).

6           Therefore, the government's CFTC, FinCen, and FBI

7    witnesses should submit proper expert reports pursuant to

8    Federal Rule of Criminal Procedure 16(a)(1)(G).  The parties

9    can then agree upon a proper schedule, and then the defendants

10   can make specific objections to specific opinions.

11          Of course, if an expert were to attempt to offer an

12   opinion at trial that is not contained in the detailed expert

13   report, that opinion could be excluded.  Therefore, there is

14   all the more reason for the parties to provide detailed expert

15   reports that include the specific opinions by the expert.

16          Finally, the defendants move to preclude the

17   government from offering evidence of unrelated offenses,

18   specifically, fraud, manipulation, and customer losses.  The

19   government responds that it does not intend to offer evidence

20   of these other unrelated offenses, but that evidence of some of

21   these items might well be part of the evidence of the crimes at

22   issue.  For example, United States customers may have been

23   victims and complained to BitMEX making it clear that they were

24   in fact US customers.  The Court cannot decide to preclude any

25   of this evidence without reference to specific evidence that is

M1KAAHAYC                    Conference

1    sought to be excluded.  Therefore, the motion is denied without

2    prejudice.

3            That concludes the defendants' motions in limine.  Let

4    me deal with the government's motions in limine nation.

5            The Court agrees basically with the defense

6    observation that the government's motions in limine fail to

7    refer to specific evidence to be included or excluded at trial

8    and thus, are not proper motions in limine.  Moreover, many of

9    them are so general that they could not be decided on the

10    current record.

11            Finally, some of the motions provide the detail for

12    the alleged proffers only in the reply brief without an

13    opportunity for the defendants to respond and thus, also could

14    not be decided on the current record.  To the extent that the

15    Court can offer any observations on the current motions, the

16    Court will, without prejudice to further briefing by the

17    parties on specific evidence.  And as the Court has already

18    pointed out in response to the defendant's motion in limine,

19    the decisions on these motions are without prejudice to

20    reconsideration.

21            First, the government argues that statements by the

22    defendants' agents and co-conspirators are admissible.  But the

23    government largely simply repeats well-accepted concepts from

24    the Federal Rule of Evidence 801(d)(2) that statements by

25    agents are not hearsay, without specific reference to specific

M1KAAHAYC                    Conference

1    statements.

2            The government also points out without contradiction

3    that statements no offered for their truth are not hearsay.

4    But the government generally does not point to any specific

5    statements that show how those specific statements are

6    admissible, why they are not being offered for their truth and

7    why many of those statements may well not be contested at

8    trial.  The government also points out that statements by

9    co-conspirators are admissible, an unacceptable proposition,

10   but the government has largely not identified the

11   co-conspirators.  And generally, statements by co-conspirators

12   would be admitted at trial subject to connection.

13           See Bourjaily v. United States, 483 U.S. 171, 175

14   (1987); see also United States v. Geaney, 417 F.2d 1116, 1120

15   (2d Cir. 1969).

16           The Court could not make the necessary findings before

17   trial.  The government does specifically refer to statements by

18   BitMEX as admissible, but with the exception of the BitMEX

19   wells position does not identify the statements it seeks to

20   admit.  The government provides various reasons for

21   admissibility, but does not point to a case where a

22   corporation's statements are automatically admissible against a

23   shareholder.  The government points out that a defendant could

24   have adopted a statement by BitMEX, but does not develop that

25   argument in the context of any specific statement and the Court

M1KAAHAYC                    Conference

1   could not rule on that issue on the present record.  There is

2   no proffer as to what the specific statements by BitMEX that a

3   defendant specifically adopted were.

4            Therefore, the motion is denied without prejudice to

5   further development in the context of specific statements.  It

6   may well be that this is an issue that should await trial

7   unless there are specific statements that require decision

8   before trial and that the Court could determine admissible or

9   not admissible prior to trial.

10            The government argues that documents produced by

11   BitMEX should be admissible as business records.  It is

12   self-evident that if the records are authentic and properly

13   satisfy the requirement of Federal Rule of Evidence 803(6),

14   they would be admissible as business records and the defendants

15   do not disagree.  Obviously, there may be issues with respect

16   to specific records and that could not be decided at this point

17   on this record.  The government also seeks a ruling that a

18   proper certification under Federal Rule of Evidence 902(11)

19   will be sufficient without the testimony of a custodian.  But

20   no ruling is necessary.  That is what Federal Rule of Evidence

21   803(6)(D) explicitly provides.  Of course, there can always be

22   the need for testimony if there is something questionable about

23   a document such that the circumstances indicate a lack of

24   trustworthiness.  See Fed. R. Evid. 803(6)(E).  But the

25   government does not need a ruling that otherwise simply follows

1    the explicit provision of Fed. R. Evid. 803(6)(D).  The parties

2    also indicate that this motion may be moot because the parties

3    are working on stipulations as to the admissibility of business

4    records.  Plainly, a stipulation with respect to the

5    admissibility of large numbers of business records would be in

6    all parties' interests.

7           The government seeks to admit evidence of BitMEX's

8    failure to file SARs and its facilitation of suspicious

9    transactions and sanctions.  The defendants do not object to

10   evidence that BitMEX did not file SARs.  The defendants also do

11   not appear to object to the introduction of specific evidence

12   of specific transactions that came to the attention of one or

13   more of the defendants.  But there is no specification of the

14   specific evidence that is at issue.

15          The government seeks to introduce evidence about

16   transactions with Iranian customers, but it is unclear from the

17   papers what the specific evidence is, and the Court could not

18   decide the issue on the present papers.  The Court notes that

19   the indictment charges that internal BitMEX reports identified

20   that customers located in Iran were subject to US sanctions

21   traded on the platform from at least in or about November 2017,

22   to at least in or about April 2018.  And that defendants Hayes

23   and Delo personally communicated with BitMEX customers who

24   self-identified as Iranian.  And BitMEX did not implement a

25   formal anti-money laundering policy in response to this Iranian

M1KAAHAYC                    Conference

1    customer activity.  Indictment Paragraph 14.

2           Whether dealing with Iranian customers and so

3    integrally intertwined with evidence of the conspiracy or arose

4    out of the same facts or transactions that form the basis for

5    the charges in violation of the Bank Secrecy Act, as charged in

6    the indictment has not been sufficiently developed so that the

7    Court could decide the issue on the present papers.

8           The government seeks to introduce alleged false

9    statements to a Hong Kong Bank and the San Francisco Exchange.

10   The government argues that this evidence is not Rule 404(b)

11   evidence because it is inextricably intertwined with the

12   charged offense and arose out of the same series of

13   transactions as the charged offenses.

14          See United States v. Towne, 870 F.2d 880, 886 (2d Cir.

15   1989).

16          This is a correct statement of the law but the half

17   page devoted to explaining why this is true, Govt. Br. at 32,

18   fails to explain why this is so in connection with the specific

19   acts relating to the San Francisco Exchange.  In its Reply

20   Brief, the government spends seven pages attempting to explain

21   why this is so, but the defendants never had the opportunity to

22   respond to why the alleged Hong Kong Bank scheme was

23   inextricably intertwined with the charged conspiracy.  And

24   indeed, one of the underpinnings of the argument that the

25   defendants were attempting to separate themselves from any

M1KAAHAYC                    Conference

association with Bitcoins, appears to strain credulity in view

of the government's arguments about the prominence of the

defendants in Bitcoins.

Moreover, the government did not appear to respond at

all to the argument that there was no showing that the alleged

false statements to the San Francisco Exchange were

inextricably intertwined with the conspiracy alleged in the

indictment.

With respect to the government's argument that this

evidence is admissible as Rule 404(b) evidence, Rule 404(b)

should generally be reserved for the government's rebuttal case

when it is clear what issues the defendants have put in issue

and when the Court can make an informed Rule 403 balancing

analysis.

See United States v. Colon, 880 F.2d 650, 661 (2d Cir.

1989).

At this point, the Court could not decide the

admissibility or inadmissibility of this evidence and either

party may make a subsequent motion with respect to its

admissibility or inadmissibility.

The government moves to preclude the expert testimony

of the defendants' expert witnesses: Professor Jerry Markham,

former CFTC Commissioner, Jill Sommers, and derivatives

industry expert Marc Nagel.  The government does not contest

the expertise of these proposed witnesses but argues that the

1    subject of their testimony, namely, the regulatory framework

2    for the industry at issue in this case, should be the subject

3    of lay testimony and not expert testimony.  For the reasons

4    already explained in response the Government's motion in

5    limine, this is a subject of expert testimony, and the

6    defendants' experts properly submitted expert reports and the

7    government's purported lay witnesses should also produce expert

8    reports.  Therefore, it is not a proper objection that the

9    defendants have submitted expert reports.  The reports were

10   properly submitted.

11            There appears to be some confusion between the parties

12   as to the proper scope of expert testimony.  The government

13   objects to the substance of the defense expert reports to the

14   extent that the experts testify as to what the law is or that

15   the law was unsettled or confusing.  However, the government's

16   proposed witnesses on this subject would purport to give their

17   lay opinion as to what the law is.

18            As the Court already explained, it is for the Court

19   and not for the witnesses to tell the jury what the law is.  It

20   is apparent that witnesses on both sides are attempting to push

21   the boundaries of expert witness testimony.  But the only way

22   to police the boundary is to make specific objections to

23   specific parts of the expert reports on both sides and for the

24   Court to rule on those objections.  The Court cannot preclude

25   the testimony of the defendants' experts without specific

M1KAAHAYC                    Conference

objections directed to specific conclusions in the expert

reports.  To the extent that the expert reports are

insufficient to provide a detailed account of the opinions,

they should be more detailed.  The experts, of course, will be

precluded from giving any opinions not contained in their

expert reports.  Therefore, there is an incentive to making

those reports as comprehensive as possible.

         At this point, the Court cannot preclude the

defendants' experts from testifying, but the government may

move to preclude any specific opinions rendered in the expert

reports.  If the reports are inadequate, fuller reports should

be provided.  The experts will be precluded from offering any

opinions not included in the expert reports.

         Thus far, the government has not provided a basis to

preclude the expert testimony of a representative from AquaQ.

Therefore, the motion to preclude that testimony is denied

without prejudice to raising any specific objections to the

expert report.

         Finally, the government seeks to preclude the

defendants form making any arguments inconsistent with the

Court's instructions on the law.  Naturally, the defendants

profess to having no such intention.  The motion is therefore

denied as moot.

         The government moves to preclude any cross examination

of Witness One as to alteration of evidence.  The motion is

M1KAAHAYC                    Conference

1      denied.  Based on the evidence about evidence of attempting to

2      destroy evidence, there is a sufficient basis to examine the

3      witness as to alteration of evidence.

4              The government also seeks to preclude examination of a

5      certain aspect of alleged motive.  This motion is also denied.

6      There is ample basis to cross-examine with respect to motive

7      and there is a sufficient connection to motive to allow this

8      examination.  The defendants appropriately undertake not to

9      examine the witness as to any religious topics.

10             So ordered.

11             All right.  I've denied the motions that were made.  I

12     know that there's a current motion to dismiss the indictment

13     which is currently being briefed.  I remind the parties that I

14     don't in a criminal case impose any page limits because I never

15     want to limit the parties to what they can tell me.  But I

16     always believe that briefer is better and more persuasive.  So,

17     the parties can conduct their briefing accordingly.  I don't

18     limit you.  I don't place time limits.  I don't place page

19     limits.  But everything that you write has to go through me.

20     So, a sufficient caution in view of the multiplying papers.

21     The parties are welcome to comment on everything that I've said

22     and to raise any other issues with me.

23             Always good to get together with you.

24             MR. BENJAMIN:  Your Honor, we have no comments or

25     question.  We appreciate the Court's thorough attention to all

M1KAAHAYC                    Conference

1    the motions.

2              MR. REHN:  Your Honor, we don't have questions about

3    the Court's rulings.  There is one thing I just wanted to raise

4    with the Court briefly was the government had filed a letter

5    regarding the requests to charge and the defendants have filed

6    a significantly longer responsive letter on January 14th.  We

7    would ask for a leave to file a reply to that letter in

8    accordance with the motion to dismiss.

9              THE COURT:  Sure.  Of course.  I usually don't reach

10   the request to charge until later but, perhaps, in this case

11   I'll review the request to charge and the parties' objections

12   in connection with the motion to dismiss.  I think that's

13   probably a good idea.  Okay?  So, sure, you can file a reply.

14             MR. ROGERS:  We also thank you for your attention to

15   these motions and your statements today and have no further

16   questions.

17             THE COURT:  Okay.

18             MR. SMITH:  Nothing further on the motions.  I do have

19   maybe something more than a housekeeping matter on the status

20   of discovery.  There is a substantial amount of data that was

21   produced by BitMEX to the government on, I believe it was

22   December 2nd, involves data relating to a customer service

23   application known as "Fresh Desk" that BitMEX used to

24   correspond with its customers.  It's a pretty substantial

25   amount of data.  It's been sitting with the government for at

M1KAAHAYC                    Conference

1    least six weeks.  We've inquired repeatedly as to the status of

2    producing it to us and our vendor.  As of right before this

3    call our vendor had not received production of the data.  We

4    followed the usual procedure, sent them a drive to receive the

5    data.  There's a lot work to do on this data, your Honor.  And

6    as you noted, we're two months out from trial.  I just don't

7    quite understand what the delay has been.  I don't want to

8    speculate on any slow walking of this.  We just need the data.

9    And I'd like to hear from the government as to the reason for

10   the delay and when we could expect it.

11            THE COURT:  Okay.

12            MR. REHN:  I don't think the defendant has the

13   timeline exactly right.  I think we received that data on

14   September 13.  But in any event, when we receive data from the

15   company we have to upload it to our system and process it and

16   Bates stamp it so that it can be searched and sort of

17   adequately produced in a way that is useful to the parties.  We

18   have been engaged in this process.  As the defense notes, it's

19   somewhat voluminous data and takes some time to do that.  We

20   have previously attempted to produce to the defendants data

21   we've obtained from third parties directly.  They've asked us

22   not to do that.  They've asked us to process it and date stamp

23   it.  That just takes time because the computer can only run so

24   fast.  So, we're engaged in that process.  We expect that this

25   data will be released within a week.

M1KAAHAYC                    Conference

1          THE COURT:  Okay.

2          MR. SMITH:  It's just kind of hard to credit that

3     response.  It doesn't take weeks and weeks to process the data.

4     They told to send the drive down ten days ago.  We sent it.

5     that's a signal that it's ready.  Everyday that goes by without

6     access to this data, which I would note is chock full of

7     exculpatory material to raise our ability to prepare for trial.

8          MR. REHN:  Your Honor, a couple things.  Number one,

9     we are processing it as quickly as we can.  I can assure you

10    it's with our vendor being stamped and we will produce it as

11    soon as it's ready to go.

12         I would just note, defense counsel's just indicated

13    the defense is very well aware of the contents of these

14    materials.  These are materials that were produced by the

15    company BitMEX, which of course the defendant controlled and

16    operated throughout the period in question.  That company has

17    been very slowly producing information to us pursuant to a

18    subpoena I think for some two years, including information as

19    recently as just last month, the data we're talking about now.

20    (technical interruption) late production, we are attempting to

21    turn it around and produce it.

22         THE COURT:  Mr. Smith, you don't have to answer if you

23    don't want.  So, BitMEX produces the information to the

24    government.  Don't the defendants have access to BitMEX for

25    getting the same material from BitMEX that BitMEX produces to

M1KAAHAYC                    Conference

1    the government?  There obviously is an advantage to all the

2    parties to have a central discovery process with Bates numbers

3    that the parties can use on both sides and know where it comes

4    from, et cetera, as opposed to BitMEX producing it solely to

5    the defendants, which if the defendants then attempted to use,

6    might result in some questions by the government whether it be

7    authenticity or something else.  So, there's an advantage to

8    all parties to have a central means of getting documents and

9    then providing them to both parties.  I would have thought that

10   to the extent that the defendants say this information is chock

11   full of exculpatory information, the defendants have it.  They

12   know what's in the information and they could and may have

13   already gotten it from BitMEX.

14         Again, I'm saying you don't have to respond to that if

15   you don't to.

16         MR. SMITH:  We certainly all wish to be singing off

17   the same sheets ever music, your Honor so there is no confusion

18   about what data is, and we have had access a limited to a

19   subset of the Fresh Desk data.  But the idea is now that BitMEX

20   has produced a comprehensive set of the data and that the

21   volume sort of outstrips anything we have had access to before

22   and it's just not so simple for the defense team here to -- we

23   don't -- just instruct the company to give us the data.  That's

24   not the protocol we have been following.  The defendants are

25   all on leave and we don't really have direct access to the

M1KAAHAYC                    Conference

1    material.  So, certainly, we made a request.  It got produced.

2    There's a protocol for us to follow in terms of receipt from

3    the government and the delay is just -- as you can tell, I

4    didn't raise it unless it was incredibly frustrating in the

5    context of the upcoming trial and that's why I raised it.

6              THE COURT:  Okay.  So, does the government have an

7    estimate as to when the Fresh Desk data will be produced?

8              MR. REHN:  Yes, your Honor.  We have been informed

9    that the data will be produced next week.  As I said, at this

10   point it's a process of loading it and that's it but it's in

11   process.  We understand that it will be ready next week.

12             THE COURT:  Does it make any sense to produce port of

13   it?

14             MR. REHN:  Essentially no, because it's one set of

15   data that kind of needs to be uploaded all together onto the

16   drive that the defense has provided.  I don't think there's

17   really a way to batch it out to least as we have.  So, we are

18   going to produce it as one production.

19             THE COURT:  Okay.  Anything else that anyone wants to

20   raise with me?

21             When will the motion to dismiss be fully briefed?

22   There's just a reply brief that's necessary, right?

23             MR. SMITH:  Yes.  I think we are due at the end of

24   next week, your Honor.  Patrick Smith speaking.

25             THE COURT:  Okay.  I'll get to the motion promptly and

M1KAAHAYC                    Conference

1    probably schedule another conference with you.

2              When is our next set date?

3              MR. RAYMOND:  The next set date actually appears is

4    the final pretrial conference which is March 16th.

5              THE COURT:  Okay.  Depending upon what comes in, I may

6    meet with you before then but I can't promise that unless

7    someone specifically has issues that need to be raised, in

8    which case I'm always available.

9              Okay.  Anything else from me today?  Okay.  Good to

10   talk to you all.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25